DAN SIEGEL, SBN 56400
JALLÉ DAFA, SBN 290637
SIEGEL & YEE
499 14th Street, Suite 300
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698

Attorneys for Plaintiff
LORI NIXON

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| LORI NIXON, | Case No. |
|---|---|
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES** |
| vs. | |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; GEORGE R. BLUMENTHAL, CHANCELLOR, UNIVERSITY OF CALIFORNIA, SANTA CRUZ, | Civil Rights |
| | **Jury Trial Demanded** |
| Defendants. | |

Plaintiff Lori Nixon complains against defendants the Regents of the University of California and George R. Blumenthal, Chancellor, University of California, Santa Cruz, as follows:

PRELIMINARY STATEMENT

1. Plaintiff Lori Nixon is a former student of the University of California, Santa Cruz ("UC Santa Cruz" or "UCSC"). On March 3, 2015, Ms. Nixon participated in a peaceful

off campus protest with five UCSC students. The students were opposing decreased state spending on public education and increased spending on policing and prisons.

2. The Regents and Chancellor Blumenthal suspended Ms. Nixon on the same day as the protest, March 3, 2015. Ms. Nixon was not informed of the length of the suspension. She waited nearly two months for her student conduct hearing on April 29, 2015. Ms. Nixon also faced criminal charges and was not informed that any information she gave to the University could be used against her in the criminal matter. Ms. Nixon was not afforded the right to counsel in the campus disciplinary proceeding, nor did the University disclose the evidence that would be used against her at the hearing.

3. Ms. Nixon finally received the University's decision on May 15, 2015, 74 days after her suspension. The Regents and Chancellor Blumenthal suspended Ms. Nixon for over a year until Fall 2016, imposed a stayed suspension until September 2017, and required 150 hours of community service. The suspension derailed Ms. Nixon's plans for graduation. She was a senior with only two months left before obtaining her degree. Ms. Nixon also served eleven days in jail for the criminal matter and was left homeless for two months during Summer 2015.

4. Ms. Nixon brings this action for violations of the First and Fourteenth Amendments to the U.S. Constitution.

## JURISDICTION

5. This action arises under the Fourteenth Amendment to the U.S. Constitution, to redress the denial of due process, and the First Amendment to the U.S. Constitution, to redress retaliation for protected free speech activities. The Court has jurisdiction over this matter under 28 U.S.C. § 1331 (actions arising under the Constitution and laws of the United States), 28 U.S.C. § 1343 (an action for relief under an Act of Congress providing for the protection of civil rights), and 42 U.S.C. § 1983 (an action to vindicate the deprivation of any Constitutional rights).

## VENUE

6. Venue is proper in the Northern District of California because the events or omissions giving rise to the claim occurred in this District.

## INTRADISTRICT ASSIGNMENT

7. A substantial part of the events or omissions giving rise to the claim occurred in Santa Cruz County.

## PARTIES

8. At all relevant times, plaintiff Lori Nixon was a student at the University of California, Santa Cruz, in Santa Cruz.

9. At all relevant times, defendant The Regents of the University of California was a governmental agency established under the California Constitution. The Regents owned and operated UC Santa Cruz, with full powers of organization and government of the University of California, a public trust. The Regents enacted and/or authorized the policies and practices complained of herein.

10. At all relevant times, George R. Blumenthal was the Chancellor and therefore the chief executive officer of the University of California, Santa Cruz. Chancellor Blumenthal is sued in his official and personal capacities for actions taken under color of law.

## STATEMENT OF FACTS

11. Plaintiff Lori Nixon is a former student of UC Santa Cruz.

12. On the morning of March 3, 2015, six UC Santa Cruz students, including Ms. Nixon, participated in a peaceful off campus protest as part of the "96 Hours of Action" to express opposition to tuition hikes and police violence, specifically the State of California's decreased public education spending and increased prison funding.

13. As a result of the five-hour protest, The Regents and Chancellor Blumenthal, acting through other administrators at UC Santa Cruz, suspended each student on that same day, March 3, 2015.

14. Pursuant to the UC Santa Cruz Code of Student Conduct section 105.08, "Interim Suspension," "a student shall be restricted only to the minimum extent

necessary when there is reasonable cause to believe that the student's participation in University activities or presence at specified areas of the campus will lead to physical abuse, threats of violence, or conduct that threatens the health or safety of any person on University property or at official University functions, or other disruptive activity incompatible with the orderly operation of the campus. A student placed on Interim Suspension shall be given prompt notice of the charges, the duration of the Interim Suspension, and the opportunity for a prompt hearing on the Interim Suspension."

15. University officials did not inform Ms. Nixon how long she would be suspended. Ms. Nixon has no history of violence. She participated in the peaceful off campus protest in an exercise of her freedom of speech. No one was physically injured. Ms. Nixon did not cause a disruption on campus. However, Ms. Nixon was removed from school and denied her property interest in her education before her hearing.

16. On March 13, 2015, UCSC Student Conduct officer Cliff Golz met with Ms. Nixon. The purpose of the meeting was to question Ms. Nixon about her involvement in the action. Ms. Nixon was asked self-incriminating questions such as "what factors were considered in your planning process" and "what was your role in decision making?"

17. This meeting with Mr. Golz occurred after Ms. Nixon had been charged with two non-violent misdemeanor charges which were related to the protest and still pending in criminal court. Ms. Nixon was not afforded the right to counsel during the meeting with Mr. Golz. No one explained to Ms. Nixon that she had a right not to incriminate herself.

18. On March 25, 2015, over three weeks after the non-violent protest, Ms. Nixon received a voluntary resolution agreement from the Student Conduct office. The agreement proposed a year and one-half suspension until September 2016. Ms. Nixon elected to contest the voluntary resolution agreement and informed the University within the required notification period.

19. Prior to Ms. Nixon's hearing, Ms. Nixon requested notification of the evidence the Conduct Board would assess in making its decision. Ms. Nixon never received any information from the University.

20. Ms. Nixon's hearing was held on April 29, 2015. By this point Ms. Nixon had been suspended for 57 days. UC Santa Cruz had denied Ms. Nixon her property interest in her education for eight weeks without resolution.

21. Without legal counsel, Ms. Nixon was required to present evidence, cross examine police officers, make arguments about First Amendment political speech protections, and persuade the Board that the proposed sanctions were excessive.

22. Ms. Nixon's March 13, 2015, conversations with hearing adjudicator and Student Conduct officer Golz were referenced in his presentation of the University's case. This March 13 conversation was used as evidence at the hearing even though Ms. Nixon did not have the right to counsel.

23. University witness UCSC Police officer Lt. Glen Harper presented evidence in the form of his "expert opinion" on protest strategies which were not directly relevant to the Board's consideration of the facts. Lt. Harper's Power Point presentation of photographic and video evidence at the scene of the protest on March 3, 2015, largely hinged on his explanation of what protest strategies he found "acceptable."

24. Ms. Nixon was never given prior disclosure of any of the forms of evidence Mr. Golz and Lt. Harper presented before the Board in order to have meaningful opportunity to present an effective defense.

25. During the hearing, one of the panel members asked Lt. Harper if he knew Ms. Nixon. Lt. Harper said he recognized Ms. Nixon from the Humanities building occupation in November 2014. Ms. Nixon later found out that one of the student representatives on the Board, Lila Blackney, had made negative statements about student activists and the Humanities occupation. Moreover, Ms. Nixon was the only student who had a hearing before a four member panel; the other five students had three member panels.

26. Ms. Nixon received the hearing board decision's on May 15, 2015, at least 15 days after her hearing and 74 days since the March 3, 2015 suspension.

27. The Regents and Chancellor Blumenthal, acting through UCSC officials, suspended Ms. Nixon until September 2016, imposed a stayed suspension until September 2017, and required 150 hours of community service.

28. Ms. Nixon lived in Santa Cruz until Summer 2015 to deal with the criminal and student judicial proceedings. Ms. Nixon was living off of her financial aid. When Ms. Nixon was suspended, her financial aid for the spring quarter was deposited into her account even though she was not able to take classes. Ms. Nixon's financial aid funds ran out in June 2015, and she was homeless for two months. Ms. Nixon spent 11 days of those two months in jail as a result of the criminal proceedings.

29. Ms. Nixon received a notice in Summer 2016 that UC Santa Cruz had sold her financial aid debt from the Spring 2015 quarter to a collection agency called Coast Professional Inc. The notice stated that Ms. Nixon owed the collection agency $5,716.47. Ms. Nixon has paid $120 to this company thus far, in addition to paying her other student loans.

30. Ms. Nixon was a senior in Spring 2015, and was only two months shy of graduation before the University suspended her on March 3, 2015.

31. The drawn-out process has caused emotional distress in regards to Ms. Nixon's student status, financial uncertainty, homelessness, loss of health care, and a potentially damaged academic and professional reputation.

**FIRST CLAIM FOR RELIEF FOR VIOLATION OF
THE FOURTEENTH AMENDMENT**
(42 U.S.C. § 1983)

32. Plaintiff incorporates by reference paragraphs 1 through 31 above as though fully set forth herein.

33. Pursuant to their established and/or authorized policies and practices, The Regents and Chancellor Blumenthal wrongfully deprived Ms. Nixon of her right to due

process guaranteed under the Fourteenth Amendment to the Constitution of the United States in that:

    (a) Notice and hearing should precede removal of a student from school.

    (b) A 10-day suspension from school is not *de minimis* and may not be imposed in complete disregard of the Due Process Clause. A suspension for more than 10 days requires formal procedures.

    (c) Ms. Nixon was denied her property interest in education for over three weeks before the University offered a voluntary resolution agreement and over 57 days before the University held a hearing.

    (d) Ms. Nixon was not advised of the evidence that was used against her by the police officer and other officials.

    (e) Ms. Nixon was denied the right to counsel.

    (f) Ms. Nixon was not advised that her statements to University officials could be used against her in the criminal proceeding.

## SECOND CLAIM FOR RELIEF FOR VIOLATION OF THE FIRST AMENDMENT
(42 U.S.C. § 1983)

34. Plaintiff incorporates by reference paragraphs 1 through 33 above as though fully set forth herein.

35. The Regents and Chancellor Blumenthal violated Ms. Nixon's right to freedom of speech under the First Amendment to the Constitution of the United States by punishing her for her involvement in the off-campus peaceful protest, and retaliated against her by suspending her and denying her property interest in education.

## DEMAND FOR RELIEF

36. As a result of actions, policies, and practices of The Regents and Chancellor Blumenthal, acting through officials at UCSC, Ms. Nixon has been denied her rights protected under the Fourteenth and First Amendments to the United States

Constitution and has suffered damages, including but not limited to harm to her reputation, emotional distress, annoyance, and inconvenience.

37. Unless this Court declares the actions of The Regents and Chancellor Blumenthal as described herein unconstitutional, The Regents and Chancellor Blumenthal will continue to subject Ms. Nixon and other students to violations of their constitutional rights pursuant to the policies and practices described herein.

WHEREFORE, Ms. Nixon requests that this Court grant her relief as follows:

(1) Declaratory relief holding that the policies and practices of The Regents and Chancellor Blumenthal as described herein violated Ms. Nixon's constitutional rights;

(2) Preliminary and permanent injunctions restraining The Regents and Chancellor Blumenthal from continuing to enforce the unconstitutional policies and practices described herein;

(3) Restitution of the costs and expenses incurred by Ms. Nixon as a result of the unconstitutional practices and policies of the defendants as described herein;

(4) General damages, in an amount to be determined;

(5) Attorneys' fees;

(6) Costs of suit; and

(7) Such other and further relief as the Court may deem proper.

Dated: February 23, 2017

SIEGEL & YEE

By: _____
Jallé Dafa

Attorneys for Plaintiff
LORI NIXON